UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 1:09-cr-00038-JAW |
| | ) | |
| GARY A. FARLOW | ) | |

**ORDER ON MOTION TO WITHDRAW PLEA OF GUILTY**

A criminal defendant seeks to withdraw his guilty plea arguing that a previously filed motion for an evidentiary hearing on the search and seizure of digital photographs was wrongly decided in light of a recent First Circuit opinion, *United States v. D'Andrea*, Nos. 08-2455, 09-1018, 2011 U.S. App. LEXIS 9541 (1st Cir. May 10, 2011). After considering the five factors for deciding whether to allow a defendant to withdraw a guilty plea, and concluding that *D'Andrea* does not mandate an evidentiary hearing in this case, the Court denies the motion.

I. **STATEMENT OF FACTS**

A. **Procedural History**

On March 11, 2009, a federal grand jury issued a twelve count indictment against Gary A. Farlow for violating laws against child pornography. *Indictment* (Docket # 1). On November 9, 2010, Mr. Farlow appeared before the Court and entered a conditional plea of guilty only to Count 11. *Tr. of Proceedings* (Docket # 124). On May 18, 2011, Mr. Farlow moved to withdraw his guilty plea and for reconsideration of the Court's earlier denial of his motion to suppress. *Mot. to Withdraw Guilty Plea and Recons. Denial of Suppression Hr'g* (Docket # 122). On

June 8, 2011, the Government objected. *Resp. of the United States of Am. to Def.'s Mot. to Withdraw Guilty Plea and Recons. Denial of Suppression Hr'g* (Docket # 125). Mr. Farlow replied on June 14, 2011. *Def.'s Reply to Gov't's Resp. to Mot. to Withdraw Guilty Plea and Recons. Denial of Suppression Hr'g* (Docket # 126).

### B.      Gary Farlow's Motion to Suppress

On August 4, 2009, Mr. Farlow moved to suppress evidence he claimed the Government obtained as a result of an illegal seizure and search of his computer. *Def.'s Mot. to Suppress Evidence Obtained as a Result of Illegal Seizure and Search* (Docket # 29) (*Def.'s Mot. to Suppress*). The motion contained a detailed factual recitation of the events leading up to the search and seizure. *Id.* at 3-6. With the motion came a demand for an evidentiary hearing. *Id.* at 3. The Government responded with affidavits from the police officers in the search, including forensic experts from the state of Maine's Computer Crimes Unit. *Resp. of the United States of Am. to Def.'s Suppression Mot.* (Docket # 35) (*Gov't's Resp.*). In his Reply, Mr. Farlow reiterated his demand for an evidentiary hearing. *Def.'s Reply to Gov't's Resp. to Mot. to Suppress Evid. Obtained as a Result of Illegal Seizure and Search* (Docket # 40) (*Def.'s Reply*). The Court referred the motion to the Magistrate Judge for recommended decision, and after concluding there was no need for an evidentiary hearing, on September 29, 2009, the Magistrate Judge recommended that the motion be denied. *Recommended Decision on Mot. to Suppress* at 8-9 (Docket # 43) (*Recommended Decision*).

In his objection to the Recommended Decision, Mr. Farlow repeated his demand for an evidentiary hearing. *Def.'s Objections to Report and*

*Recommendation* at 2-3 (Docket # 44) (*Def.'s Objs.*).   Significantly, Mr. Farlow conceded that the "facts recited regarding the scope of the warrant and the actions taken in executing the warrant are not disputed."  *Id.* at 2. Mr. Farlow did not seek an evidentiary hearing to present his own expert; rather, he contended that if the Government's computer expert were cross-examined, the expert would "have to admit" that his affidavit was in error and defense counsel's understanding of computer searches was correct.  *Id.*   On December 3, 2009, in affirming the Recommended Decision, the Court addressed the Defendant's demand for an evidentiary hearing and concluded that it was not necessary.  *Order Affirming the Recommended Decision of the Magistrate Judge* (Docket # 52) (*Order*).

The Court reviewed First Circuit authority on when a defendant is entitled to an evidentiary hearing on a motion to suppress, *id.* at 4-6 (discussing *United States v. Allen*, 573 F.2d 42 (1st Cir. 2009); *United States v. Calderon*, 77 F.3d 6 (1st Cir. 1996)), and the Court concluded that Mr. Farlow failed to generate a basis for the Court to conclude that a "substantial claim is presented," *id.* at 6 (quoting *Calderon*, 77 F.3d at 9).  Mr. Farlow did not propose to call his own expert to challenge the Government's expert's affidavit concerning how forensic searches of computers may be carried out.  Instead, confident that cross-examination of the Government's expert would force the expert to buckle and concede that his affidavit was in error and defense counsel's understanding of computer forensics was correct, the entire basis for Mr. Farlow's earnestly reiterated demand for an evidentiary hearing was not evidence but hope.  The Court resolved that neither First Circuit authority nor

Rule 47(b) required the Court to grant an evidentiary hearing based solely on assertions in a memorandum of law. *Id.* at 4-6.

### C.    Abortive Attempts at Trial

Following the December 3, 2009 denial of the motion to suppress, the case proved especially difficult to bring to conclusion.  There were two subtexts to Mr. Farlow's case.  First, his on-line encounters with a New York undercover officer, which had led to the issuance on the contested search warrant, also resulted in state criminal charges in New York.  Mr. Farlow pleaded guilty to that charge and was incarcerated in the state of New York.  Second, Mr. Farlow is not well.  Even so, the parties engaged in an unusual delay of the disposition of the case, which the Court with increasing reluctance approved.  At a conference of counsel on December 18, 2009 (Docket # 57), Mr. Farlow stated his intention to waive jury trial and proceed with a bench trial, a decision which commonly results in a speedier resolution because of enhanced scheduling flexibility.

Not so here.  After the trial was set for January 12, 2010, on December 29, 2009, the Government moved to continue the matter to March 10, 2010, a date certain, on the ground that a Government witness was not available to testify until March.  *Unopposed Mot. of the United States to Continue Trial and for a Date Certain* (Docket # 58).  On December 29, 2009, the Court granted the unopposed motion and gave notice to the parties that a bench trial was set for March 10, 2009. *Order* (Docket # 59); *Notice of Hr'g* (Docket # 60).  On February 5, 2010, Mr. Farlow moved to continue the March 10, 2010 trial date until May, 2010 based on the representation that the parties were engaged in plea negotiations which required

4

medical information about Mr. Farlow's health and life expectancy. *Def.'s Unopposed Mot. for Continuance Trial* (Docket # 64). The Court granted the motion on February 5, 2010 and placed the matter on the May trial list. *Order* (Docket # 65).

On March 24, 2010, Mr. Farlow moved to continue the May trail date to June because Mr. Farlow had undergone a liver biopsy on March 10, 2010 and was awaiting the results and because he had been scheduled for a hearing on May 5, 2010 on the New York criminal charges. *Def.'s Unopposed Mot. for Continuance of Trial* (Docket # 70). The Court granted this motion to continue on April 5, 2010 with the understanding that the Government was going to file a motion for a date certain to try the case in June. *Order* (Docket # 72). On April 13, 2010, the Government moved for the Court to set June 23, 2010 as the date for trial. *Unopposed Mot. of the United States for a Trial Date Certain of June 23, 2010* (Docket # 75). The Court granted the motion on April 15, 2010. *Order* (Docket # 76).

Instead of trial, however, upon notice by counsel, the Court set June 28, 2010 as the date for the entry of a guilty plea. *Notice of Hr'g* (Docket # 87). On June 21, 2010, the Government moved to continue the Rule 11 hearing because Mr. Farlow was then in custody in New York, the Government did not know when he would be released, and Mr. Farlow could not be produced in Maine in time for the June 28, 2010 plea hearing. *Unopposed Mot. of the United States to Continue Change of Plea Hr'g* (Docket # 88). Having clarified that Mr. Farlow should be released from New

York custody by September 2010, the Court granted this motion on June 21, 2010 and continued the case to September 7, 2010. *Speedy Trial Order* (Docket # 89).

As September approached, Mr. Farlow moved to continue the case until October on the ground that Mr. Farlow was still in New York custody and that the parties were working diligently to resolve the case. *Def.'s Unopposed Mot. for Continuance of Trial* (Docket # 91). The Court granted the motion on August 3, 2010. *Order* (Docket # 92). On September 21, 2010, the Court set a change of plea hearing for November 4, 2010, but on September 24, 2010, the Government again moved to continue the plea hearing because of coordination difficulties with Mr. Farlow's transportation between New York authorities and the United States Marshal. *Unopposed Mot. of the United States to Continue Change of Plea Hearing* (Docket # 97). The Court granted the motion and set a new plea hearing date for November 9, 2010. *Speedy Trial Order* (Docket # 98).

Finally, on November 9, 2010, more than a year and a half post-indictment and almost a year after his motion to suppress had been finally denied, Mr. Farlow appeared in Court and entered a conditional plea of guilty to one count of possession of child pornography, preserving his right to challenge the denial of his motion to suppress. *Conditional Agreement to Plead Guilty* (Docket # 102).

### D. Post-Plea Developments

At the end of the November 9, 2010 Rule 11 hearing, the Court ordered the preparation of the customary Presentence Investigation Report (PSR). The Probation Office prepared the initial report on December 28, 2010 and revised the

PSR on January 25, 2011.  Mr. Farlow should have been ready for sentencing.  He was not.

The Court held a presentence conference on February 22, 2011.  Mr. Farlow challenged: 1) the completeness of the PSR regarding his conversations with the supposed young male in New York; 2) the number of images of child pornography; 3) the use of the computer enhancement; and 4) the appropriate treatment of his 2007 New York conviction for attempted indecent assault on a minor.  Mr. Farlow also raised questions about his health status and its impact on sentencing and asked for a short period of time to obtain further medical information, which the Court granted.  The Court held a further conference of counsel on March 15, 2011 and defense counsel represented that she had been unable to obtain a written opinion from the Defendant's treating physician about Mr. Farlow's life expectancy.[1]

The Court vigorously intervened and pressed defense counsel to impress upon the doctor the need to respond.  It required the defense attorney to obtain the opinion by March 18, 2011 and allowed the Government until March 21, 2011. *Minute Entry* (Docket # 111).  Defense counsel provided her own synopsis of the doctor's opinion on March 23, 2011, *Letter from Assistant Fed. Defender* (AFD) *Virginia G. Villa to Hon. John A. Woodcock, Jr.* (Dated Mar. 18, 2011, received Mar. 23, 2011), but the doctor did not formally respond until March 25, expressing his

---

[1] The Assistant Federal Defender (AFD)'s inability to obtain a life expectancy opinion from the treating physician was especially frustrating since the AFD had raised Mr. Farlow's life expectancy as an issue as long ago as February 5, 2010.  *Def.'s Unopposed Mot. for Continuance of Trial* (Docket # 64) at 1 ("In preparing for trial, the Government recently offered a possible resolution of this case. However, its offer depends on an expert opinion regarding the current status of the defendant's health and life expectancy").

professional opinion on Mr. Farlow's life expectancy. *Letter from James H. Morse, M.D. to Ms. Virginia Villa* (Dated Mar. 16, 2011, faxed to AFD Villa Mar. 25, 2011). The Government then moved to extend the time until April 8, 2011 to decide whether to obtain a second opinion as to Mr. Farlow's life expectancy, which the Court reluctantly granted on March 31, 2011. *Mot. to Enlarge Time* (Docket # 112); *Order* (Docket # 113). On April 7, 2011, the Court received a letter from the prosecutor indicating that the Government was going to rely on a written response from its gastroenterologist and attaching a letter from Richard P. Beveridge, M.D. *Letter from Assistant United States Att'y James M. Moore to Hon. John A. Woodcock, Jr.* (Apr. 6, 2011); *Letter from Richard P. Beveridge, M.D. to James M. Moore* (Apr. 6, 2011).

### E.   The May 6, 2011 Sentencing Hearing

On April 7, 2011, the Court set Mr. Farlow's sentencing for May 6, 2011. *Notice of Hearing* (Docket # 114). The PSR had calculated a guideline sentence range of 262 to 327 months, which was statutorily capped at 240 months. *PSR* at 13. Mr. Farlow filed a sentencing memorandum on April 29, 2011, suggesting that the Court impose a sentence of a year and a day. *Def.'s Mem. in Aid of Sentencing* at 1 (Docket # 115) (*Def.'s Mem.*). The Government filed its on May 3, 2011. *Mem. of the United States in Aid of Sentencing* (Docket # 116) (*Gov't Mem.*).

Although Mr. Farlow appeared for sentencing on May 6, 2011, he was not sentenced. In the PSR, Mr. Farlow was held responsible for 3,366 images of child pornography, which placed him well over the 600 images necessary for a five level

8

enhancement under U.S.S.G. § 2G2.2(b)(7)(D).  In his objections to the PSR, Mr. Farlow contended that none of the images in the unallocated space of the computer should be included in calculating the numerical enhancement, and once those images were removed, Mr. Farlow fell below 600 images.  Mr. Farlow did not, however, raise this issue in his sentencing memorandum.  *Def.'s Mem.* at 1-9. Strangely, the Government raised the issue in its memorandum and represented that it intended to call Detective Laurie Northrup to testify about the pornographic content of the images she found in the unallocated space of Mr. Farlow's computer.[2] *Gov't's Mem.* at 3-4.  But at the outset of the sentencing hearing, defense counsel brought up a legal issue she had not previously raised: whether viewing child pornography is the same as possessing child pornography.  She recalled the name (but not the citation) of a Tenth Circuit case, *United States v. Tucker*,[3] in which she said a dissenting judge had discussed such a difference.  She offered no real explanation as to why she had not mentioned *Tucker* or this argument before the hearing itself.  Instead, she suggested that since her objection to the enhancement only reduced the guideline calculation one level and since Mr. Farlow was, in any event, over the twenty-year statutory maximum, the Court should accept her argument and sentence Mr. Farlow on its assumed accuracy.

The Court demurred.  The Court explained that it had an obligation to calculate the correct guideline sentence range as a starting point and to treat that range as advisory.  Consequently, the Court was not willing to begin at an improper

---

[2] The pornographic content of the images had never been challenged by the AFD.
[3] 305 F.3d 1193 (10th Cir. 2002).

starting point, even if that point exceeded the statutory maximum. Further, the sentencing in this case was particularly serious since Mr. Farlow was facing up to twenty years in prison, the guidelines advised a sentencing range in excess of twenty years, and Mr. Farlow was suggesting that he be incarcerated for only a year and a day. The Court therefore allowed defense counsel to file a supplemental memorandum discussing *Tucker* and its purported applicability to the guideline calculation in this case. The Government was allowed to respond. But defense counsel—either deliberately or negligently—successfully scuttled the sentencing hearing.[4]

---

[4] In similar circumstances, where a lawyer failed to raise a legal issue in a prehearing memorandum and attempted to raise it for the first time at the hearing itself, the Court would hold the party to have waived the argument. Here, the AFD did not object to the PSR on the ground that there is a legal difference between possessing and viewing, did not mention the issue in her sentencing memorandum, did not cite *Tucker* in the memorandum, and instead waited until after the sentencing hearing had begun to spring the issue and *Tucker* on the Court and the prosecutor. This type of tactic is inexcusable; however, the AFD knows that, even in the face of such conduct, the Court will not punish her client for her actions but will likely continue the hearing to allow full consideration of even a late raised issue. Even though the First Circuit would likely have upheld a decision that the defendant had waived the right to present this issue in these egregious circumstances, as the AFD well knew, the Court could not properly assess the force of her argument having been presented with it for the very first time moments before sentence was to be pronounced. Regardless of the way it was raised, once fairly considered, if the point should have affected the sentence, the AFD also knew the Court would consider it.

   Ironically, when the AFD filed her supplemental memorandum, she mentioned *Tucker* only in passing. *Def.'s Supplemental Mem. in Aid of Sentencing* at 7 (citing *see also United States v. Tucker*, 305 F.3d 1193, 1205 and n.16 (10th Cir. 2002) as "leaving open the possibility of lack of possession where a defendant is ignorant of the automatic storage on a computer due to having only viewed, but not downloaded, those images"). In *Tucker*, contrary to the AFD's representation, there was no dissent. In fact, the Tenth Circuit affirmed the defendant's conviction. *Tucker*, 305 F.3d at 1205. Furthermore, the Tenth Circuit decided *Tucker* in 2002 and therefore there was no reason the issue and the case could not have been raised earlier.

   Courts that have addressed whether child pornography found in the cache of a computer may constitute possession have relied on evidence pointing "convincingly towards the defendant's intent." *United States v. Winkler*, 639 F.3d 692, 697 (5th Cir. 2011); *see United States v. Dobbs*, 629 F.3d 1199, 1201 (10th Cir. 2011) (reversing knowing receipt of child pornography conviction based entirely on two electronic photographs found only on the defendant's internet cache); *United States v. Bass*, 411 F.3d 1198, 1200 n.1 (10th Cir. 2005) (defendant's membership in e-group "Candyman", which is a "free Internet service that enabled interested people to collect and distribute child pornography"). Whether the evidence here is sufficient to count the images of child pornography on Mr. Farlow's cache remains to be seen, but the AFD's argument on this issue and the evidence

Mr. Farlow duly filed the supplemental memorandum on May 11, 2011 and the Government responded on May 18, 2011. *Def.'s Supplemental Mem. in Aid of Sentencing* (Docket # 120); *Resp. of the United States to the Def.'s Supplemental Mem. in Aid of Sentencing* (Docket # 121). The Court scheduled a second sentencing hearing for June 6, 2011. *Notice of Hr'g* (Docket # 119). But on May 10, 2011, the First Circuit decided *United States v. D'Andrea*, Nos. 08-2455, 09-1018, 2011 U.S. App. LEXIS 9541 (1st Cir. May 10, 2011), and on May 18, 2011, Mr. Farlow moved to withdraw his guilty plea and for reconsideration of the motion to suppress.

## II.   DISCUSSION

### A.   Standards for Withdrawal of Guilty Plea

The parties have correctly identified the criteria by which a court must evaluate a motion to withdraw a plea of guilty. Under Federal Criminal Rule 11, a court may allow a defendant to withdraw a guilty plea before sentence is imposed for "a fair and just reason." FED. R. CRIM. P. 11(d)(2)(B). The First Circuit, while observing that the district court retains a wide range of discretion, points to five factors that inform the district court's decision: 1) "whether the plea was voluntary, intelligent, knowing, and complied with Rule 11;" 2) "the force of the reasons offered by the defendant;" 3) "whether there is a serious claim of actual innocence;" 4) "the timing of the motion;" and 5) "any countervailing prejudice to the government if the defendant is allowed to withdraw his plea." *United States v. Padilla-Galarza*, 351 F.3d 594, 597 (1st Cir. 2003).

---

required to demonstrate Mr. Farlow's intent could not have been anticipated by either the Court or the prosecutor based on the AFD's prior filings. In effect, the way the AFD raised this issue succeeded in forcing the Court to continue the sentencing hearing.

Here, Mr. Farlow relies only on the fourth factor—timing—to buttress his motion. *Def.'s Mot.* at 2 ("Mr. Farlow relies on the fourth factor which relates to this Court's prior denial of his motion to suppress without having conducted a suppression hearing").   The Court treats the third factor—the force of the defendant's reasons for withdrawal—as intertwined with timing.  Nevertheless, it is significant that none of the other three factors supports his motion.  The Court conducted an extensive and detailed Rule 11 hearing on November 9, 2010 and Mr. Farlow makes no claim that he did not fully understand the nature of his conditional plea, that he did not enter into the plea voluntarily, or that the Court failed to comply fully with the requirements of Rule 11.  Mr. Farlow has never made any claim that he is actually innocent and his admission of the facts in the Prosecution Version of the Government's case, including the presence of an image of child pornography on his computer, belies any contention that he is actually innocent of the crime to which he pleaded guilty.  The Government asserts that it will suffer expense, inconvenience, and delay if the motion is granted.  *Gov't Resp.* at 10-11.

The Court turns to timing and the force of Mr. Farlow's reasons for withdrawal.  In a couple of respects, the timing of this motion favors Mr. Farlow. Since it was filed (just barely) before sentencing, the Court is directed to "liberally allow withdrawal of guilty pleas for any 'fair and just reason.'"  *United States v. Gurka*, 605 F.3d 40 (1st Cir. 2011) (quoting *United States v. Mescual-Cruz*, 387 F.3d 1, 6 (1st Cir. 2004) (quoting Fed. R. Crim. P. 11(d)(1)(B))).

Also, immediately following the Rule 11, Mr. Farlow was subject to mandatory detention and the Court remanded Mr. Farlow to the custody of the United States Marshal.  He remains in custody awaiting sentence.  Although Mr. Farlow does not mention it, if the custodial status quo were maintained, the prejudice to the Government would be lessened because the suppression hearing could be held at its convenience and during its resolution, Mr. Farlow, who admitted he committed a serious crime, might remain in prison.  At the same time, if the Court granted the motion to withdraw guilty plea, he would be presumed innocent and his continued custody pending final resolution of the motion to suppress would be subject to statutory provisions of 18 U.S.C. § 3142.  Neither his continued detention nor his release would be a forgone conclusion.  *United States v. Lemoine*, 450 F. Supp. 2d 99 (D. Me. 2006) (discussing post-indictment release).

In other respects, timing does not benefit Mr. Farlow.  This case has now been pending for an inordinately long time and by the time that he filed a motion to withdraw his guilty plea, the Court had already begun a sentencing hearing, which was aborted by objections by defense counsel, and a rescheduled sentencing hearing was imminent.

Mr. Farlow's best point on timing, however, is that the motion was precipitated by the First Circuit decision in *United States v. D'Andrea*, which was handed down on May 10, 2011.  Nos. 08-2455, 09-1018, 2011 U.S. App. LEXIS 9541 (1st Cir. May 10, 2011).  Mr. Farlow says that he promptly filed the May 18, 2011 motion in response to *D'Andrea*.

### B.    *United States v. D'Andrea*

In *United States v. D'Andrea*, the First Circuit vacated district court judgments in a child pornography case based on evidence the trial court had refused to suppress. *Id.* at *7. In rejecting the motion to suppress, the district judge had declined to hold an evidentiary suppression hearing. *Id.* The appellate court remanded the matter to the district court with a directive to hold an evidentiary hearing on the motion to suppress. *Id.* at *35. Arguing that *D'Andrea* requires an evidentiary hearing in his motion to suppress, Mr. Farlow urges the Court to apply *D'Andrea*'s lesson to his case and to allow him to withdraw his guilty plea so that the evidentiary hearing can be held.

The Court, however, does not view *D'Andrea* as changing longstanding First Circuit law on whether a trial court must hold an evidentiary hearing on a motion to suppress and concludes that *D'Andrea*'s teaching does not affect Mr. Farlow's motion. In *D'Andrea*, the police received a tip from a private citizen that the defendants had posted pornographic images of a minor on a password protected website. *Id.* at *1-2. One of the defendants had apparently inadvertently sent a pornographic image of a child to the tipster. The tipster had figured out the access codes and had accessed the website, which she confirmed contained images of child pornography. *Id.* at *3-5, 9 n.8. The tipster gave the passwords to the police, who ultimately were successful in accessing the website and confirming the criminal nature of the images. *Id.* at *3-5.

The appellate and district courts focused on the applicability of the private search doctrine to the facts in the case. At issue was whether the defendants

14

maintained a reasonable expectation of privacy in the website or whether they had used the website in such a fashion as to assume the risk of access by others. To this end, how the tipster came to possess the image and to access the website became critical. Here, the appellate court noted that the trial court's finding that the defendants had shared the access codes with the tipster was clearly erroneous; instead, the tipster had managed to figure out the passwords by putting together scraps of information. *Id.* at *15-16. Moreover, the defendants had filed an affidavit stating that they had not shared the password with anyone. *Id.*

The First Circuit concluded that these factual issues required an evidentiary hearing:

> It is possible that an evidentiary hearing would unearth facts to support a finding of assumption of the risk--for example, if Jordan or D'Andrea were so careless with the password that one of them assumed the risk of its disclosure. Further, it is mentioned on one of the DSS information sheets that "[t]he pictures had been forwarded to the site and various responders with web-names had written to many pictures with comments of a highly sexualized nature." This arguably implies that defendants had shared the site with others. If, however, as D'Andrea and Jordan have sworn, they never shared the password with anyone and reasonably believed no one else could get into the account, assumption of the risk would not be present. In sum, an evidentiary hearing is needed to explore whether the circumstances under which the Tipster obtained the account access information evince that defendants assumed the risk that the security of their account would be compromised.

*Id.* at *16-17 (internal citations omitted).

Secondly, in *D'Andrea*, the Government justified the search on the ground that it had merely followed the tipster's private search but, as the First Circuit noted, if the agents exceeded the scope of the private search, the private search

doctrine might not justify the search. *Id.* The First Circuit concluded that there was insufficient evidence on the record to make this factual determination. *Id.*

The *D'Andrea* Court's final concern is the one that comes closest to the facts in this case. In *D'Andrea*, the First Circuit observed that in the private search doctrine, the scope of the private search doctrine restricts the ensuing governmental search. *Id.* at *19-20 ("[A]n antecedent private search does not amount to a free pass for the government to rummage through a person's effects"). The appellate court directed that "the evidentiary hearing should explore whether, in accessing the website, the DSS agents were virtually certain that it contained nothing of significance except for the pictures of child pornography, or whether they also expected to discover something else." *Id.* at 20. Mr. Farlow argues that this principle similarly compels the trial court to hold an evidentiary hearing as to whether the search protocol the agents used in his case was overly broad. More specifically, the Court should receive evidence to evaluate whether, by engaging in a visual search rather than tracing hash values, the agents overstepped their authority in an effort to seek out the true object of their search, child pornography. *Def.'s Mot.* at 4-5.

There are, however, several key differences between *D'Andrea* and this case. First, *D'Andrea* involved a warrantless search. Here, the agents obtained a search warrant for the initial search and, upon visually observing child pornography, obtained a second search warrant for a more extensive search. The Magistrate Judge concluded that the initial search warrant was not "imprecise or overly broad

in authorizing a search that extended to data that was stored on Farlow's computer," *Recommended Decision* at 7, and quoting *United States v. Upham*, 168 F.3d 532, 535 (1st Cir.1999), she observed that "[a] search of a computer and co-located disks is not inherently more intrusive than the physical search of an entire house for weapons or drugs." *Recommended Decision* at 7. In affirming the Recommended Decision, this Court agreed that the search warrant was not overly broad. *Order* at 7-8.

What is left in this case is whether the search protocol the agents used pursuant to a valid warrant impermissibly allowed the police to "rummage through [Mr. Farlow's] effects." *D'Andrea*, 2011 U.S. App. LEXIS 9541 at *19-20. This is a serious issue and, as *D'Andrea* noted, the same principles that restrict searches under the private search doctrine apply to the plain view doctrine. *Id.* at *20. However, here, the narrow context is whether the defendant sustained his burden to demonstrate that an evidentiary hearing was necessary to resolve this issue.

From the Court's perspective, *D'Andrea* did not change the teaching that "[a] criminal defendant does not have a presumptive right to an evidentiary hearing on a motion to suppress," and the defendant must still make "a threshold showing that material facts are in doubt or dispute and that such facts cannot reliably be resolved on a paper record." *Id.* at 7 (citation omitted). In its December 3, 2009 Order, the Court extensively reviewed the affidavit of Sgt. Lang and concluded that it set forth a sufficiently detailed and persuasive explanation of the search protocol in this case to justify the constitutionality of his search. *Order* at 12-13.

Unlike *D'Andrea*, Mr. Farlow makes no claim that the Court's factual conclusions were clearly erroneous. Although he disagrees with the contents of Sgt. Lang's affidavit, he has not asserted that the Court made a finding unsupported by the record. Furthermore, unlike *D'Andrea*, he has not presented the Court with a credibility issue. There are no countervailing affidavits, which could require the Court to make credibility judgments in order to rule on the motion. Finally, unlike *D'Andrea*, there is detailed evidence in this case as to why the agent performed this specific search protocol, evidence from which the Court was able to conclude that the search was justified. If Mr. Farlow presented a countervailing affidavit that Sgt. Lang was in error and that his sworn affidavit about the search protocol should be discounted, he may have sustained his burden to obtain an evidentiary hearing. He did not.

So, more than a year and a half after this Court's Order on the motion to suppress, we are back at the beginning. As the Court painstakingly explained on December 3, 2009, defense counsel's mere representation that her cross-examination must cause the Government's expert to change his mind is not sufficient to meet the threshold showing necessary to require an evidentiary hearing. A lawyer's assertion in a memorandum is not "an affidavit" under Rule 47(b). FED. R. CRIM. P. 47(b). Again, a court is not required to accept "unsupported factual assertions in [a defendant's] memorandum of law," where the memorandum does not contain any record citations that would have confirmed these allegations." *Order at* 5 (quoting *United States v. Allen*, 573 F.3d 42, 52 (1st Cir. 2009)); *see*

*United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996). A court is not required to hold an evidentiary hearing on a motion to suppress every time a lawyer demands one and to mandate an evidentiary hearing simply because a lawyer says she will produce evidence on cross-examination in contradiction to the contents of filed affidavits would eviscerate the rule that requires the party seeking the evidentiary hearing to place facts into play to justify the request.

### C.   Motion to Withdraw Guilty Plea

In short, the Court is not convinced that there is any reason to change its December 3, 2009 decision, affirming the Magistrate Judge and denying the request for an evidentiary hearing. What is different since December 2009 is that Mr. Farlow has pleaded conditionally guilty and the context of his motion for an evidentiary hearing is not simply repetitive but is interwoven with a demand that he be allowed to withdraw his guilty plea in order to obtain an evidentiary hearing. So the standards for relief are heightened by Mr. Farlow's need to meet the criteria justifying the withdrawal of his guilty plea and by the Court's determination, he has satisfied none of the First Circuit's five factor criteria to justify withdrawal of his conditional guilty plea.

Finally, at his November 9, 2010 conditional guilty plea, Mr. Farlow expressly reserved the right to challenge the Court's rulings on the motion to suppress on appeal, including the denial of his demand for an evidentiary hearing, and Mr. Farlow is free on appeal to attempt to convince the First Circuit what he could not convince this Court.

19

## III.   CONCLUSION

The Court DENIES Gary A. Farlow's Motion to Withdraw Guilty Plea and Reconsider Denial of Suppression Hearing (Docket # 122).  The Court directs the Clerk of Court to schedule a sentencing hearing forthwith.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
CHIEF UNITED STATES DISTRICT JUDGE

Dated this 4th day of August, 2011